UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PC CELLULAR, INC., a Florida
Corporation, SOUTHEAST CORPORATE
STORES, a Florida Corporation, and
CHADDIE SULEIMAN,

       Plaintiffs,

v.                                                                          Case No. 5:14-cv-237

SPRINT SOLUTIONS, INC., a Delaware
Corporation, BOOST MOBILE, LLC, a
Delaware limited liability company,
JERRY BLAND (an individual), VIP
WIRELESS, INC., a Pennsylvania Corporation,
VIP HOLDINGS, LLC, a Delaware limited
liability company, JACK HUSTON (an
individual), PATRICK GROSKOPF (an
individual), and VIRGIN MOBILE USA, L.P.,

       Defendants.

---

## DEFENDANT'S, VIP WIRELESS, INC., VIP HOLDINGS, LLC, JACK HUSTON AND PATRICK GROSKOPF'S, MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants, VIP WIRELESS, INC. ("VIP WIRELESS"), VIP HOLDINGS, LLC ("VIP

HOLDINGS"), JACK HUSTON ("Huston") and PATRICK GROSKOPF ("Groskopf"),

pursuant to Federal Rule of Civil Procedure 12(b)(2) and Loc. R. N. D. Fla. 7.1(A), hereby move

this Court to dismiss all counts contained in the Plaintiffs' First Amended Complaint, and in

support thereof state the following:

## PROCEDURAL POSTURE & ALLEGATIONS IN THE COMPLAINT

1.   The First Amended Complaint (the "Complaint") constitutes Plaintiffs' third attempt to state a claim against VIP Wireless, VIP Holdings, Huston and Groskopf (collectively, the "VIP Defendants") in this Court.  This Court has previously dismissed two of the Plaintiffs' complaints, once in a separate proceeding, **Case Number 5:14-cv-137**, and again upon Plaintiffs' subsequent filing of their second complaint in the instant proceeding, **Case Number, 5:14-cv-237**.

2.   Plaintiffs' previous complaint asserted claims against the VIP Defendants under, *inter alia*, theories of tortious interference with a business relationship, open account and common law equitable accounting.  All of these claims were dismissed by this Court.

3.   Plaintiffs now seek monetary relief on two counts directed against all the defendants, including the VIP Defendants, asserting claims for alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and for an alleged civil conspiracy.

4.   Plaintiffs allege that they are engaged in the mobile phone business, operating retail stores located along the Gulf Coast of Florida. (Compl. ¶ 17).  Plaintiffs further allege that the alleged violations of law complained of took place in Florida and Alabama.  (Compl. ¶ 14).

5.   Plaintiffs allege that the VIP Defendants engaged in conduct that constituted an alleged improper tortious interference with Plaintiffs' businesses, with such alleged interference constituting duress.  (Compl. ¶¶ 78-82).

6.   The Complaint does not contain a claim for, and the Plaintiffs do not seek, relief under a count for tortious interference with a business relationship.

7.   The Complaint does not allege harm to any Florida consumer.

8.   Count I, sounding in an alleged violation of FDUTPA, recites a laundry list of alleged

2

conduct attributed to the VIP Defendants.  There, Plaintiffs allege that the VIP Defendants:

    a.  "initiated a plan of deception and subterfuge to drive Plaintiff Suleiman from the mobile wireless business altogether[;]"

    b.  "requested that Suleiman misstate the truth to circumvent liability for an automobile accident[;]"

    c.  "improperly demand[ed] a settlement of accounts[;]"

    d.  "unreasonably withdrew credit, demanded payment, demanded a personal guaranty, and demanded inventory back to liquidate an alleged amount owed[;]"

    e.  "intentionally caused [Plaintiffs] to terminate each's individual store location leases[;]"

    f.  "intentionally created a 'bait and switch' situation…to allow a new owner to step in" and "thus eliminating Suleiman from the mobile market[;]" and

    g.  "intentionally sought to interfere with PCC's business relationship with "Actify[.]"

(Compl. ¶ 99).

    9.  Most telling, and the gravamen of Plaintiffs' Complaint, is the Plaintiffs' allegation that the VIP Defendants violated FDUTPA by "[s]ecretly plotting to effectively destroy Plaintiffs' business" by perpetrating an alleged "bait and switch." (Compl. ¶¶ 102 b, 105).  Yet, the Complaint alleges that the list of alleged demands leading to the Plaintiffs' alleged ouster was written by co-defendant Bland, and that based on co-defendant "Sprint/Bland's representations," plaintiff Suleiman agreed to the conditions.  (Compl. ¶¶ 44-45).  More specifically, Plaintiffs' allege that "[i]n other words, relying on [co-defendant] SPG's

3

representations, [plaintiff] Suleiman had to sacrifice his VIP store locations to save his Actify store locations." (Compl. ¶ 46).    Thus, by Plaintiffs' own allegations, the only alleged misrepresentations upon which the Plaintiffs allegedly relied were made by co-defendants other than the VIP Defendants.

10. Relying upon these conclusory allegations, Plaintiffs conclude that the VIP Defendants' alleged conduct constituted "unfair, unconscionable and deceptive and unfair methods of competition under [FDUTPA]." (Compl. ¶ 100).  Plaintiffs, however, overlook the meaning and purpose of FDUTPA, which is directed toward protection of consumers as more fully described, *infra*.  Even if FDUTPA were applicable to the allegations, which it is not, the Complaint fails to state a claim against the VIP Defendants for the reasons described, *infra*.

11. Plaintiffs also allege that the VIP Defendants participated in an alleged civil conspiracy.  (Compl. ¶¶ 106-114).  By Plaintiffs' own allegations in Count II, however, the defendants allegedly conspired to violate FDUTPA and not an independent underlying tort. (Compl. ¶¶ 111-113).  Rather than alleging the existence of an underlying tort, Plaintiffs allege that "Defendants, individually and collectively, conspired to commit unlawful acts or lawful acts by unlawful means," "participated in the conspiracy," and "conspired…to accomplish the goal as set forth in Count I" to the Plaintiffs' alleged damage, damages which the Plaintiffs have failed to articulate.  (Compl. ¶¶ 107-114).  These allegations are insufficient to state a claim against the VIP Defendants for civil conspiracy, as described more fully, *infra*.

12. Likewise, the Complaint fails to state a claim for an independent civil conspiracy, which requires allegations not present in the Complaint, to wit, allegations concerning malicious motive and coercion through numbers or economic influence, described *infra*.

13. Finally, the Complaint fails to allege any ultimate facts concerning Huston and

Groskopf that would subject either Huston or Groskopf to personal jurisdiction in either the U.S. District Court or the state courts of Florida.  Plaintiffs' Complaint thus fails to establish a *prima facie* case regarding personal jurisdiction as to Huston and Groskopf.

14. For these reasons, and upon the authority cited in the following Memorandum of Law and Argument, Plaintiffs' Complaint should be dismissed in its entirety as to the VIP Defendants.

## I.   STANDARD FOR THE GRANTING OF A MOTION TO DISMISS

The U.S. Supreme Court has reasoned that a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, that a formulaic recitation of the elements of a cause of action will not do, and that factual allegations must be enough to raise a right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation)).

By this standard, the Complaint fails to state a claim as a matter of law because it fails to allege ultimate facts with the particularity required for pleading under the Federal Rules of Civil Procedure.  In the alternative, even if the Complaint is found to state a cause of action, this cannot be so as to Huston and Groskopf individually because they are not subject to personal jurisdiction in Florida.

## II.   STANDARD FOR DISMISSAL FOR LACK OF PERSONAL JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2).

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to assert the defense of lack of personal jurisdiction.  The determination of whether personal jurisdiction over a non-resident defendant exists requires a two-part analysis, considering (1) the Florida long-arm statute, and

(2) the minimum contacts test and the Due Process Clause of the Fourteenth Amendment. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499 (Fla. 1989); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990). Only if both prongs are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant. *Id.*

### a. The Complaint fails as to Huston and Groskopf for lack of personal jurisdiction under Rule 12(b)(2), Fed.R.Civ.P.

Plaintiffs' Complaint must be dismissed as to Huston and Groskopf because they are not subject to personal jurisdiction in Florida. The U.S. Court of Appeals for the Eleventh Circuit has reasoned that a plaintiff seeking to exercise personal jurisdiction over a non-resident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). Conclusory allegations are insufficient to establish a *prima facie* case of personal jurisdiction. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). "When a defendant raises through affidavits ... a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony, or documents." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990).

### i. Specific Versus General Jurisdiction

Jurisdiction may be specific or general. "General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint." *H.E.R.O., Inc. v. Self*, 2012 U.S. Dist. LEXIS 69044. at *7 (S.D.Fla. May 17, 2012); *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006). To exercise general jurisdiction over a non-resident defendant,

the defendant must have "continuous and systematic" contacts with the state. *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1318 (11th Cir. 2006). This requires contacts "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011). Huston and Groskopf, as individuals, have little or no contacts with Florida and are certainly not "essentially at home" in Florida pursuant to *Goodyear.* Any contacts with Florida that Huston and Groskopf may have had in their corporate capacity are not sufficient to render them subject to general jurisdiction in Florida. *See e.g. Goldberg,* 2014 U.S. Dist. LEXIS 77945, at *12.

Where, as here, a defendant is not subject to general jurisdiction in the forum state, a district court may exercise specific jurisdiction over the defendant if the cause of action arises out of or relates to the defendant's in-state activity. *Breckenridge Pharmaceutical, Inc.,* at 1360-61 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985)). To determine whether specific jurisdiction may be exercised over "a non-consenting out-of-state defendant," a district court must undertake the two-pronged test described, *supra,* concerning whether the forum state's long-arm statute permits service of process on the defendant, and whether due process requirements have been met via the minimum contacts test. *Id.* at 1361.

Here, Plaintiffs fail to make out a *prima facie* case of jurisdiction over Huston and Groskopf in both the specific and general jurisdiction contexts. Additionally, the affidavits of Jack Huston and Patrick Groskopf, attached hereto as **Exhibits "A" and "B,"** respectively, demonstrate that no grounds for personal jurisdiction exist against them.

    ii.   <u>Florida's Long-arm Statute</u>

Fla. Stat. § 48.193 sets forth the conditions under which a Florida court may exercise personal jurisdiction over a non-resident defendant. Section 48.193 provides:

(1)(a)   A person ... who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

     1.    Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

     2.    Committing a tortious act within this state.

     ...

(2)    A defendant who is engaged in substantial and not isolated activity within this state ... is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

§ 48.193, Fla. Stat. (2014)(emphasis added).

Here, the Complaint alleges limited facts concerning Huston and Groskopf individually: (i) that they are Pennsylvania residents[1], (ii) that Huston is the CEO of VIP Wireless, Inc. and that Groskopf is Vice President of Sales at VIP Wireless, Inc., and (3) that "each of the defendants has subjected themselves to jurisdiction in the State of Florida by engaging in one or more of the acts complained of in this district, all in violation of Fla. Stat. § 48.193(1) (a), (b), (c), (f), (g), and (2), as more particularly described herein." (Compl. ¶¶ 9, 10, 12). The Complaint contains further conclusory allegations concerning conduct allegedly attributable to Huston and Groskopf, <u>not a single instance of which is alleged to have occurred in the State of Florida</u>. (*See* Compl. ¶¶ 30-32, 40, 49, 78-82, 99-105, 109-113). The Complaint also contains several allegations concerning the Plaintiffs being asked to make misrepresentations, allegedly on behalf of the defendants, without alleging who supposedly asked the Plaintiffs to make those misrepresentations. (*See* Compl. ¶¶ 34-35). The Complaint futher contains allegations that a

---

[1] Plaintiffs' allegation is erroneous in this regard. Groskopf is a resident of the State of New York.

VIP entity made statements to the Plaintiffs without any attribution to any VIP entity officer or employee who specifically made the alleged statement. (*See* Compl. ¶¶ 34-36).

The Complaint simply does not contain a single allegation that Huston or Groskopf personally carry on business in the State of Florida or that either Huston or Groskopf committed a tortious act in Florida as would be necessary to confer specific jurisdiction. The Complaint also fails to allege that either Huston or Groskopf is engaged in any substantial activity in Florida—nor can it—as would be necessary to confer general jurisdiction. (*See* Fla. Stat. § 48.193(2); Huston Aff.; Groskopf Aff.). Although Plaintiffs allege, in conclusory fashion, that each of the defendants, including Huston and Groskopf, "has subjected themselves to jurisdiction in the State of Florida by engaging in one or more of the acts complained of in this district, all in violation of Fla. Stat. § 48.193(1) (a), (b), (c), (f), (g), and (2)", this conclusory allegation is insufficient to satisfy Plaintiffs' burden to establish a *prima facie* case of jurisdiction under Florida law. *Snow,* 450 F.3d at 1318.

Huston's and Groskopf's affidavits demonstrate that both are citizens and residents of Pennsylvania and New York, respectively. (Huston Aff. ¶ 2; Groskopf Aff. ¶ 2). Huston is the CEO of VIP Wireless, Inc., and his business office is located in Pennsylvania. (Huston Aff. ¶¶ 3-5). Groskopf is the Vice President of Sales of VIP Wireless, Inc., and his business office is located in Pennsylvania. (Groskopf Aff. ¶¶ 3-5). Neither Huston nor Groskopf have an office in Florida and neither owns property in Florida. (Huston Aff. ¶¶ 7-8; Groskopf Aff. ¶¶ 7-8). Outside of their corporate capacities, Huston and Groskopf do not personally operate, conduct, engage in, or carry on any business in Florida whatsoever. (Huston Aff. ¶ 6; Groskopf Aff. ¶ 6). Any contact that Huston or Groskopf may have had with Actify, which is not admitted, would have necessarily been with Actify's headquarters, which is located in Indiana. (Huston Aff. ¶ 9; Groskopf Aff. ¶ 9). Finally, any contact that Huston or Groskopf may have had with the State of

Florida in the course and scope of their employment is not sufficient to render them subject to jurisdiction in Florida individually. *See Goldberg v. U.S.,* 2014 U.S. Dist. LEXIS 77945, at \*12 (S.D.Fla. June 9, 2014)(explaining that the corporate shield doctrine "prohibits acts of a corporate employee performed in a corporate capacity from forming the basis for jurisdiction over that employee in an individual capacity"); *see also Doe v. Thompson,* 620 So.2d 1104, 1106 (Fla. 1993). In light of these facts, and absent sufficient allegations to the contrary, it is clear that neither Huston nor Groskopf is subject to personal jurisdiction under Florida's long-arm statute.

   iii.   <u>Minimum Contacts</u>

The Complaint likewise fails to allege ultimate facts demonstrating that Huston's and Groskopf's involvement, if any, in the alleged facts meets the minimum contacts test. Florida courts apply a three-part test to determine if sufficient "minimum contacts" exist for purposes of conferring specific jurisdiction: (1) whether the plaintiffs' claims "arise out of or relate to" the defendant's contacts with the forum; (2) whether the defendant's contacts represent a "purposeful availment of the privilege of conducting activities within the forum state," and (3) whether the exercise of personal jurisdiction would be fair and reasonable. *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339 (11th Cir. 2013). Here, Plaintiffs do not allege that Huston or Groskopf had any contacts with the State of Florida, and it is clear from Huston's and Groskopf's affidavits that neither gentleman has purposefully availed himself of the privilege of conducting activities within the State of Florida in their individual capacities.

Further, to exercise general jurisdiction over a non-resident defendant, the defendant must have "continuous and systematic" contacts with the state. *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1318 (11th Cir. 2006). This requires contacts "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011). Huston and Groskopf, as individuals, have no contacts with

Florida and are not "essentially at home" in Florida pursuant to *Goodyear*.  Any contacts with

Florida that Huston or Groskopf may have had in their respective corporate capacities are *not*

sufficient to render either of them subject to jurisdiction in Florida. *See e.g. Goldberg,* 2014 U.S.

Dist. LEXIS 77945, at *12.  Thus, because the Complaint does not allege any contacts by Huston or

Groskopf with the forum, much less any that would be sufficient to subject either of them to

jurisdiction, the claims against Huston and Groskopf must be dismissed pursuant to Rule 12(b)(2)

for lack of personal jurisdiction.

**III.**    **Count I fails as a matter of law because the allegations contained therein are insufficient to state a claim under FDUTPA.**

"A claim under FDUTPA has three elements: (1) a deceptive or unfair practice; (2)

causation; and (3) actual damages." *Nature's Products, Inc. v. Natrol, Inc.*, 990 F.Supp.1307,

1322 (S.D. Fla. 2013).  Citing the Florida Supreme Court, the Eleventh Circuit has noted that

"deception occurs if there is a representation, omission, or practice that is likely to mislead the

consumer acting reasonably in the circumstances, to the consumer's detriment. This standard

requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a

reasonable relying consumer.'" *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284

(M.D. Fla. 2007)(citations omitted). The U.S. District Court for the Northern District of Florida,

Pensacola Division, has reasoned that "[u]nfair and deceptive trade practices are not defined by

the legislature, but Florida courts have held that a practice is unfair if it 'offends established

public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

consumers.'" *JDI Holdings, LLC v. Jet Management, Inc.*, 732 F.Supp.2d 1205, 1234 (N.D. Fla.

2010).  "FDUTPA…is aimed toward making consumers whole for losses caused by fraudulent

consumer practices." *Id.*

The common theme in the above-cited authority is FDUTPA's relation to protecting consumers. The Complaint contains no allegation that Florida consumers were harmed by any alleged conduct of the VIP Defendants. Further, under *Zlotnick*, there can be no deception for FDUTPA purposes without misleading representations, acts or omissions. Here, the Complaint alleges that the list of alleged demands leading to the Plaintiffs' alleged ouster was written by co-defendant Bland, and that based on co-defendant "Sprint/Bland's representations," plaintiff Suleiman agreed to the conditions. (Compl. ¶¶ 44-45). More specifically, Plaintiffs' allege that "[i]n other words, relying on [co-defendant] SPG's representations, [plaintiff] Suleiman had to sacrifice his VIP store locations to save his Actify store locations." (Compl. ¶ 46).

By Plaintiffs' own allegations, the only alleged misrepresentations the Plaintiffs allegedly relied upon came from others than the VIP Defendants. Moreover, the Complaint alleges, time and again, that the VIP Defendants' alleged conduct constituted tortious interference with Plaintiffs' business relationships. Remarkably, however, Plaintiffs have not pled such a claim in this Complaint after having that claim previously dismissed by this Court on two occasions. Clearly, the gravamen of Plaintiff's Complaint is that the VIP Defendants interfered with the Plaintiffs' business relationships; yet, no such claim now exists, with a nebulous claim for a FDUTPA violation taking its place. Thus, for the foregoing reasons, Count I fails to state a claim, and should be dismissed.

## IV. Count II fails as a matter of law because the allegations contained in Count II are insufficient to state a claim for civil conspiracy.

### a. Count II fails for lack of an actionable underlying tort or wrong.

An actionable conspiracy requires an actionable underlying tort or wrong. *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984). Florida courts have reasoned that, to state a cause of action for an underlying tort, the plaintiff must properly allege the elements that would

establish that tort. *Buckner v. Lower Florida Keys Hospital Dist.*, 403 So.2d 1025, 1027-29 (Fla. 3d DCA 1981)(reasoning that, in a complaint for conspiracy to defame, the failure to allege a publication rendered the pleading insufficient as a matter of law). If even a single element of the alleged underlying tort is not sufficiently pled, the complaint should be dismissed. *See Wright*, 446 So. 2d at 1165 (Fla. 5th DCA 1984); *Buckner*, 403 So.2d at 1027 (Fla. 3d DCA 1981).

Here, by Plaintiffs' own allegations, the defendants allegedly conspired to violate FDUTPA as alleged in Count I. (Compl. ¶¶ 111-113). Because Count I fails as described, *supra*, Count II necessarily fails as well.

### b. Alternatively, Count II fails as to VIP Wireless and VIP Holdings because an entity cannot conspire with itself.

It is well-settled in Florida that a legal entity is viewed as acting through its principals and therefore cannot conspire with itself to commit an underlying wrong. See *Buckner v. Lower Florida Keys Hospital Dist.*, 403 So.2d 1025, 1027-29 (Fla. 3d DCA 1981); *Lawler v. Eugene Wuesthoff Memorial Hosp. Ass'n*, 497 So.2d 1261, 1263 (Fla. 5th DCA 1986)(reasoning that all of the alleged conspirators were, in one form or another, the agents and actors for the entity hospital).

Here, the Complaint alleges that VIP Wireless acted through VIP Holdings, Huston and Groskopf to commit the alleged conspiracy, yet then alleges that Huston and Groskopf conspired with co-defendant Bland and took overt acts in furtherance of the alleged conspiracy with Bland. (Compl. ¶¶ 109, 110-113). Either VIP Wireless and VIP Holdings participated in the alleged conspiracy, or they did not; Plaintiffs cannot have it both ways. Pursuant to *Buckner* and *Lawler*, however, it is a legal impossibility for the VIP entities to have conspired with themselves, through Huston and Groskopf, to commit any underlying wrong. Thus, Count II fails to state a claim as a matter of law as to the VIP entities and should be dismissed.

c. **Even if characterized as a cause of action for the independent tort of conspiracy without an underlying wrong, Count II fails as a matter of law.**

Florida courts have reasoned that, "ordinarily there can be no independent tort for conspiracy." *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977). The independent tort of conspiracy "is actionable where a plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual could not possess." *Buckner v. Lower Florida Keys Hospital Dist.*, 403 So.2d 1025, 1029 (Fla. 3d DCA 1981). "The essential elements of this tort are a malicious motive and coercion through numbers or economic influence." *Churruca*, 353 So. 2d at 550 (Fla. 1977).

Here, the allegations in Count II plainly show that the intended cause of action stated is for conspiracy to violate FDUTPA. (Compl. ¶¶ 109-113). Nowhere do the Plaintiffs allege the essential *Churruca* element of independent conspiracy of coercion through numbers or economic influence. Not only does the Complaint fail to state a single allegation regarding any peculiar power of coercion possessed by the VIP Defendants as a group, it is manifest from Plaintiffs' allegations that Plaintiffs cannot show the existence of collective coercive power by virtue of any combination that any individual purported conspirator could not possess alone under a *Buckner* analysis. Thus, even if there was a colorable argument that Count II sounds in independent conspiracy, the allegations of Count II are insufficient as a matter of law. Therefore, Count II fails to state a claim for the independent tort of conspiracy, and should be dismissed.

d. **Even if Count II is deemed appropriate, it can be deemed so only as to VIP Wireless and VIP Holdings, and not as to Huston and Groskopf individually.**

It is well-settled in Florida that corporations and limited liability companies are separate legal entities, distinct from the persons comprising them. *See Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008). "[E]ven if a corporation is merely an alter ego of its

dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained." *Id.* (citing *Lipsig v. Ramlawi*, 760 So.2d 170, 187 (Fla. 3d DCA 2000). To show that an entity is the alter ego of an individual, a plaintiff must allege: "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the plaintiff." *Gasparini*, 972 So.2d at 1055.

Here, there is no allegation in the Complaint that either Huston or Groskopf were parties to the agreements at issue in their individual capacities. Thus, if the alleged conspiracy occurred, which it did not, it would necessarily have been committed by VIP Holdings and VIP Wireless and not by Huston and Groskopf individually. These facts are analogous to *Gasparini*, wherein the court reasoned that, since the contract at issue was made between the plaintiff and the defendant corporation, the trial court "clearly erred in holding [the defendant entity's President] liable for damages" individually. *Id.*

Plaintiffs clearly seek to pierce the veils of VIP Wireless and VIP Holdings in order to impose liability upon Huston and Groskopf individually for whatever role VIP Wireless and VIP Holdings may have played in the alleged conspiracy, the occurrence of which is denied. Plaintiffs have, however, failed to plead the substantive elements required to pierce the veil of either VIP Wireless or VIP Holdings as did the plaintiff in *Gasparini*, and assert only the bare allegation that VIP Wireless and VIP Holdings acted at the behest of Huston and Groskopf. (Compl. ¶¶ 99, 109-111). The Complaint does not allege that Huston or Groskopf were alter egos of either VIP Wireless or VIP Holdings, that an alleged improper use of the corporate form

caused injury to Plaintiffs, or that the VIP entities' separate identities were not lawfully maintained.

Because the Complaint does not allege the requisite elements necessary to pierce the veils of either VIP Wireless or VIP Holdings, Count II fails to state a cause of action against Huston and Groskopf individually and should be dismissed.

## CONCLUSION

Upon the foregoing argument and authority, the allegations contained in Plaintiffs' Complaint fail as a matter of law as to the VIP Defendants, and the Complaint should thus be dismissed in its entirety.

WHEREFORE, because Counts I and II of the Complaint are insufficient to state a cause of action, the VIP Defendants respectfully request that this Court enter an order dismissing the Complaint, and awarding other further relief as this Court deems proper.

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this court on December 11, 2014.

BARRON & REDDING, P.A.

Michael P. Dickey
Florida Bar #15606
Jeffrey S. Carter
Florida Bar #89633
P. O. Box 2467
Panama City, Florida 32402
(850) 785-7454
Primary: mdickey@barronredding.com
Secondary: chodges@barronredding.com
Secondary: eservice@barronredding.com

ATTORNEYS FOR DEFENDANTS
VIP WIRELESS, INC., VIP HOLDINGS,
LLC, JACK HUSTON AND PATRICK
GROSKOPF

## RULE 7.1(B) CERTIFICATION

Pursuant to Local Rule 7.1(B), the undersigned counsel certifies that he has conferred with counsel for the Plaintiffs in a good-faith effort to resolve by agreement the issues raised in this Motion, and that counsel were unable to resolve such issues.

_____
Jeffrey S. Carter, Esq.

17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PC CELLULAR, INC., a Florida
Corporation, SOUTHEAST CORPORATE
STORES, a Florida Company, and
CHADDIE SULEIMAN,

        Plaintiffs,

v.                                      Case No. 5:14-cv-237

SPRINT SOLUTIONS, INC., a Delaware
Corporation, BOOST MOBILE, LLC, a
Delaware limited liability company,
JERRY BLAND (an individual), VIP
WIRELESS, INC., a Pennsylvania Corporation,
VIP HOLDINGS, LLC, a Delaware limited
liability company, JACK HUSTON (an
individual), PATRICK GROSKOPF (an
individual), and VIRGIN MOBILE USA, L.P.,

        Defendants.

_____

### AFFIDAVIT OF JACK HUSTON

STATE OF  PA

COUNTY OF  BuckS

      BEFORE ME, the undersigned authority, personally appeared JACK HUSTON who,

after first being duly sworn, states as follows:

    1.    I am suis juris, competent to testify, and have firsthand knowledge of the facts

        stated herein.

    2.    I am a citizen and resident of the State of Pennsylvania.

    3.    I am employed as Chief Executive Officer with VIP Wireless, Inc.

    4.    VIP Wireless, Inc. is a Delaware corporation.

1



EXHIBIT

A

5.     My business address is 1366 Ford Road, Bensalem, Pennsylvania, 19020.

6.     I do not personally operate, conduct, engage or carry on business or any business venture in Florida aside from acts that may arise in my corporate capacity as Chief Executive Officer with VIP Wireless, Inc.

7.     I do not, personally or through my employment with VIP Wireless, Inc., maintain an office in Florida.

8.     I do not own property in Florida.

9.     The entity identified as Actify in this lawsuit is headquartered in Indiana. I did not have any communication with Actify, but if I had, it would have necessarily been through Actify's Indiana headquarters.

FURTHER AFFIANT SAYETH NOT.

_____
Jack Huston

SWORN TO AND SUBSCRIBED before me this _15_ day of October, 2014, by _____, who: (notary **must** check applicable box)

☑ is personally known to me.
☐ produced a current Florida driver's license as identification.
☐ produced _PA DL_ as identification.

(SEAL)

_Shannon Alessandroni_
(Print Name)
Notary Public
Commission #
My Commission Expires: _October 25, 2017_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SHANNON ALESSANDRONI, Notary Public
Bensalem Twp., Bucks County
My Commission Expires October 25, 2017

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PC CELLULAR, INC., a Florida
Corporation, SOUTHEAST CORPORATE
STORES, a Florida Company, and
CHADDIE SULEIMAN,

       Plaintiffs,

v.                                       Case No. 5:14-cv-237

SPRINT SOLUTIONS, INC., a Delaware
Corporation, BOOST MOBILE, LLC, a
Delaware limited liability company,
JERRY BLAND (an individual), VIP
WIRELESS, INC., a Pennsylvania Corporation,
VIP HOLDINGS, LLC, a Delaware limited
liability company, JACK HUSTON (an
individual), PATRICK GROSKOPF (an
individual), and VIRGIN MOBILE USA, L.P.,

       Defendants.

---

## AFFIDAVIT OF PATRICK GROSKOPF

STATE OF ___PA___
COUNTY OF ___Bucks___

      BEFORE ME, the undersigned authority, personally appeared PATRICK GROSKOPF

who, after first being duly sworn, states as follows:

    1.    I am suis juris, competent to testify, and have firsthand knowledge of the facts

          stated herein.

    2.    I am a citizen and resident of the State of New York.

    3.    I am employed as Vice President of Sales with VIP Wireless, Inc.

    4.    VIP Wireless, Inc. is a Delaware corporation.

1



5.     My business address is 1366 Ford Road, Bensalem, Pennsylvania, 19020.

6.     I do not personally operate, conduct, engage or carry on business or any business venture in Florida aside from acts that may arise in my corporate capacity as Vice President of Sales with VIP Wireless, Inc.

7.     I do not, personally or through my employment with VIP Wireless, Inc., maintain an office in Florida.

8.     I do not own property in Florida.

9.     The entity identified as Actify in this lawsuit is headquartered in Indiana. Any communication I may have had with Actify was through Actify's Indiana office.

FURTHER AFFIANT SAYETH NOT.

_____

Patrick Groskopf

SWORN TO AND SUBSCRIBED before me this __15__ day of October, 2014,

by _____, who: (notary **must** check applicable box)

☐ is personally known to me.
☐ produced a current Florida driver's license as identification.
☐ produced __N Y D L__ as identification.

(SEAL)

_Shannon Alessandroni_

(Print Name)
Notary Public
Commission #
My Commission Expires: _October 25, 2017_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SHANNON ALESSANDRONI, Notary Public
Bensalem Twp., Bucks County
My Commission Expires October 25, 2017

2