# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

PC CELLULAR, INC., a Florida
Corporation, SOUTHEAST CORPORATE
STORES, a Florida company and
CHADDIE SULEIMAN, an Individual,

    Plaintiffs,

v.                                                    Case 5:14-cv-00237-RS-GRJ

SPRINT SOLUTIONS, INC.,
a Delaware Corporation, BOOST MOBILE
LLC, a Delaware limited liability company,
JERRY BLAND, an Individual, VIP
WIRELESS INC., a Pennsylvania
Corporation, VIP HOLDINGS, LLC,
a Delaware limited liability company,
JACK HUSTON, an individual,
PATRICK GROSKOPF, an individual, and
VIRGIN MOBILE USA, L.P.,

    Defendants.
_____/

## **ORDER**

Before me are Defendant's, VIP Wireless, Inc., VIP Holdings, LLC, Jack Huston, and Patrick Groskopf's, Motion to Dismiss (Doc. 29); Sprint Solutions, Inc., Boost Mobile, LLC, Virgin Mobile USA, L.P., and Jerry Bland's Motion to Strike and Dismiss Plaintiffs' First Amended Complaint (Doc. 30); and Plaintiffs' Opposition to Defendants' Motions to Dismiss (Doc. 34).

1

Chaddie Suleiman, along with his corporate affiliates, sues Sprint and VIP Wireless, along with their individual and corporate affiliates, for unfair consumer practices and civil conspiracy. He alleges that Sprint and VIP conspired to force him to sell the pre-paid cellular telephone stores which he owned and operated.

After review, I find that Suleiman's Amended Complaint should be stricken from the record, and that in any event, his complaint fails to state any claim upon which relief can be granted. Sprint and VIP's motions are therefore granted, and Suleiman's claims are dismissed with prejudice.

## I.   STANDARD OF REVIEW

To overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S. Ct. 2229, 2232 (1984).  I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff.  *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir. 1999)).

## II.    BACKGROUND

### *a.    Facts*

Plaintiffs PC Cellular and Southeast Corporate Stores, which are both controlled by Plaintiff Chaddie Suleiman, (collectively, "Suleiman"), operated 14 retail mobile phone stores in Northwest Florida and Alabama. (Doc. 24 at 3).

Suleiman entered into contracts with Defendant Sprint Solutions, along with its subsidiaries, Defendants Boost Mobile and Virgin Mobile, and through a Sprint management executive, Jerry Bland (collectively, "Sprint"), to sell Sprint's pre-paid cell phone services to consumers. (Doc. 20 at 3).[1] Plaintiffs were required to have their storefront with a landlord approved by Sprint. (*Id.*).

Suleiman likewise entered into contracts with a "master service provider," Defendant VIP Wireless, Inc., operating through Defendant VIP Holdings, LLC, and through its president, Jack Huston, and vice president, Patrick Groskopf (collectively, "VIP"), to supply the retail stores with inventory. (*Id.*). Plaintiffs had a similar agreement with another (non-party) master service provider, Actify. (*Id.*). The contracts were two separate multi-party agreements: the first between Suleiman, Sprint, and VIP; and the second between Suleiman, Sprint, and Actify. (*Id.* at 4).

---

[1] Because the First Amended Complaint's descriptions of the business relationship between Suleiman, Sprint, and VIP are even more convoluted than in the original Complaint, I rely in part on the description of the facts from my November 5, 2014, Order (Doc. 20) concerning this case.

Suleiman alleges a series of events in which Sprint and VIP "conspired" to force him out of the prepaid mobile phone business. (Doc. 24 at 7). Around February 2014, both Sprint and VIP allegedly plotted to remove Suleiman from his stores that were associated with Sprint and VIP. (*Id.*). The dispute appears to have begun when one of Suleiman's employees crashed into another car, and Sprint and VIP wanted to invoke insurance policies to address the claim. (*Id.*). Following this incident, VIP turned off Suleiman's access to its ordering website until he addressed the insurance claim. (*Id.*). The same day, VIP shut down the stores' online activation and payment portals, which effectively closed the stores, and also demanded that Suleiman settle past due accounts receivables and verify proof of insurance. Suleiman claims that this was totally unexpected and a change of position from their prior course of dealings. (*Id.* at 8). He believes that this was a result of his refusal to lie to say that the employee in the car crash was travelling between stores, which would have given rise to insurance coverage. (*Id.*).

After Suleiman produced proof of his insurance, VIP still demanded a personal guarantee on the debt and payment of $100,000 in past-due debt before it reactivated its portals. (*Id.* at 9). The next week, VIP repossessed about $200,000 in inventory from his stores. (*Id.*).

Sprint then sent Suleiman a list of demands, which applied to not only his VIP locations but also his Actify locations. (*Id.* at 9-10). The demands included

payments of all amounts due, and required the sale of his VIP stores. (*Id.* at 10). Suleiman acquiesced to these demands, which he believed would terminate his VIP stores and allow him to keep running his Actify stores. (*Id.* at 12).

Thereafter, Sprint told Suleiman that it would be ending his Actify agreements as well, on the grounds that he had defaulted on their contracts by engaging in improper "unauthorized" advertising, and by mixing inventory between VIP and Actify stores. (*Id.* at 14). Suleiman admits to the unauthorized advertising, but claims that it was a pretext, because Sprint had tacitly allowed the advertising for months, and other retailers did it as well. (*Id.*). Suleiman was forced to sell his stores at fire-sale prices to another retailer. (*Id.* at 13).

### b.    *Procedure*

Suleiman first brought this suit in a separate case, *PC Cellular v. Spring Corporation et al.,* 5:14-cv-137-RS-CJK, filed on June 3, 2014. Defendants moved to dismiss the complaint in August 2014, and Suleiman failed to respond. Since no response was filed, I summarily granted the motions and dismissed the claims without prejudice. (*See* 5:14-cv-137-RS, Doc. 24). Two weeks later, Suleiman, without leave to do so, filed an amended complaint in the same case against defendants that had already been dismissed. As this complaint was filed in violation of my order, I struck the complaint from the record and directed the clerk to close the case. (*see* 5:14-cv-137-RS, Doc. 26).

Suleiman refiled his complaint, styled as the present case, on September 17, 2014. He brought claims against both Sprint and VIP for tortious interference with a business relationship as to Plaintiffs' leases (Count I); tortious inference with a business relationship as to Actify (Count II); open account (Counts IV, V, VI, and VII), and common law equitable accounting (Count VIII). He also brought a "wrongful termination" claim against Sprint (Count III).

In my November 5, 2014, Order (Doc. 20), I dismissed Suleiman's complaint without prejudice in its entirety for failure to state a claim upon which relief could be granted. As it appeared possible that a more carefully drafted complaint may have been able to state a claim, I granted Suleiman leave to file an amended complaint. Since the complaint was dismissed for failure to state a claim, I declined to consider disputes concerning personal jurisdiction of the individual defendants or Suleiman's request for jurisdictional discovery.

On the deadline to file an amended complaint, November 19, 2014, Suleiman submitted a motion to extend time to file the complaint, stating that Defendants consented to the extension. (*See* Doc. 21). Suleiman stated that he was seeking new counsel in the matter, and was requesting an extra ten days to file the complaint in order transition between counsel. I granted the motion in my November 20, 2014, Order (Doc. 22).

On December 1, 2014, Suleiman filed his First Amended Complaint (Doc. 24) through his original counsel, Attorney Bradford A. Patrick. The same day, Suleiman filed a motion (Doc. 23) to allow additional counsel, Attorney Robert V. Williams, to appear *pro hac vice*. I denied that motion in my December 2, 2014, Order (Doc. 25) for failure to comply with the requirements of our local rules for admission *pro hac vice*. Attorney Williams has since never appeared on Suleiman's behalf, and all subsequent filings have been made through Attorney Patrick.

Suleiman's First Amended Complaint abandoned his original claims and alleged two claims against both Sprint and VIP—Count I for violation of the Florida Deceptive and Unfair Trade Practice Act, Fla. Stat. § 501.201 et seq, and Count II common law civil conspiracy. Defendants now to dismiss Suleiman's Amended Complaint for failure to state a claim and for lack of personal jurisdiction as to the individual defendants. Sprint also moves to strike the First Amended Complaint for failure to comply with a court order. Suleiman did not respond to Sprint's motion to strike.

### III.  ANALYSIS

After review, I find that both the motion to strike and the motions to dismiss for failure to state a claim should be granted, and Suleiman's complaint should be dismissed with prejudice. Because the complaint can be dismissed on that ground,

I need not consider issues surrounding personal jurisdiction, or Suleiman's pending motion for jurisdictional discovery (Doc. 35).

### a. *Sprint's Motion to Strike*

Sprint has moved to strike the Suleiman's First Amended Complaint on the grounds that the extension of filing time that Sprint consented to was premised on Suleiman's request to obtain new counsel. Although a new counsel briefly attempted to appear, no appearance was ever entered, and all subsequent filings have been made by Suleiman's original counsel. Suleiman did not respond to this motion; it is completely unaddressed in Plaintiffs' Opposition to Defendants' Motions to Dismiss (Doc. 34).

I need not decide the merits of Sprint's motion, because it is within my discretion to grant the motion solely based on Suleiman's failure to respond. "Failure to file a responsive memorandum may be sufficient cause to grant the motion." N.D. Fla. Loc. R. 11.1(C)(1).

Suleiman was well aware of this rule, because I previously dismissed his complaint for failure to comply with this exact same rule. (*See* 5:14-cv-137-RS, Doc. 24). Suleiman's failure to respond to Sprint's motion, taken together with his previous failure to respond to the motions to dismiss and subsequent failure to comply with orders of this Court, (*see* 5:14-cv-137-RS, Doc. 26), indicate a gross disrespect for the rules and authority of this Court.

The Complaint should be stricken for failure to respond to Sprint's motion. Therefore, since no amended complaint was filed pursuant to my November 5, 2014, Order (Doc. 20) dismissing the previous claims, this case must be dismissed. As Suleiman has shown disrespect for this Court's rules through multiple failures to comply with them, the dismissal should come with prejudice.

Because this case can be dismissed with prejudice on this ground alone, I need not address the motions to dismiss. However, this case has been pending at the pleadings stage since June 3, 2014—more than seven months ago. In the interest of finality, in the event that striking the Amended Complaint is found to be an abuse of discretion, I will proceed to address the motions to dismiss as an alternative ground for dismissal.

### b. Count I: Violation of the FDUTPA

The Florida Deceptive and Unlawful Trade Practices Act ("FDUTPA") states that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006). An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citations and quotations omitted).

The parties dispute whether Suleiman, as an operator of a business, has standing under the statute, which is designed for consumer protection. However, I need not decide the issue of standing, as Suleiman has failed to allege sufficient factual material to allege any "unfair or deceptive acts."

Even assuming that Suleiman is a "consumer," none of the facts that it alleges either offend public policy or are immoral or unethical to consumers. Rather, all of the actions that it alleges appear to be specifically authorized by its contracts with Sprint and VIP. (*See* Doc. 30-1 at 9 (showing that contracts were terminable for any reason upon 30 days' notice or immediately upon certain events of default)). Suleiman does not deny this, and he has indeed abandoned his claims for breach of contract. Further, the Amended Complaint appears to admit to specific breaches of his agreements—unauthorized advertising and mixing inventory—that would give Sprint and VIP clear contractual grounds to terminate the agreements and demand payments of debts owed.

In his responsive memorandum, other than conclusory arguments that his complaint shows deceptive actions, Suleiman cites only one example of a deceptive practice—Sprint misleading him into believing that if he gave up his VIP locations, he could settle that dispute and keep his Actify locations.

First, it is unclear how VIP played any part in this alleged deception, and those defendants could be dismissed on that ground. Second, it is entirely unclear how Sprint's actions were in any way deceptive, especially to the point of being unconscionable or immoral. Sprint's decision to terminate his agreement as to the Actify stores, a decision which was entirely authorized by the contracts, should not have had any bearing on what Suleiman did with the VIP stores. Sprint and VIP were demanding payment of past-due debts then owed to the VIP stores, and Suleiman chose to pay the debt by giving up VIP stores. He does not allege how he otherwise would have satisfied the debt had he known that he would soon lose his Actify stores as well. Furthermore, even had the VIP dispute never arisen, Sprint's decision to legally terminate all his contracts would have shut down his VIP stores as well, leaving Suleiman in substantially the same position that he is today.

Given Suleiman's half-hearted defense of his failure to allege any unfair or deceptive act, I am unable to discern any allegations of such acts in Suleiman's Amended Complaint that are sufficient to state a claim upon which relief can be granted. Count I must therefore be dismissed.

Because Suleiman previously had an opportunity to amend his complaint, it appears that there is no set of facts which he able to plead that will state a claim upon which relief may be granted, and additional opportunities for drafting would prove fruitless. Dismissal must therefore come with prejudice.

### c. Count II: Common Law Civil Conspiracy

The elements of a civil conspiracy in Florida are (1) a conspiracy between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006).

In this case, there is no independent unlawful act, because as I have already found, Suleiman has not alleged a violation of the FDUTPA.

However, Florida courts in rare circumstances have recognized an independent tort of civil conspiracy. The plaintiff must show "some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess." *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977). The essential elements of this tort are a malicious motive and coercion through numbers or economic influence.

The complaint does not appear to allege this rarely-invoked independent tort. It instead appears to recite the elements of common-civil conspiracy, which requires an underlying illegal act.

But even were I to construe the complaint as alleging this tort, it nonetheless fails to state a claim as a matter of law. The complaint, outside or conclusory allegations, does not show any malicious motive. Nor does the complaint show

how the damages were peculiar to the conspiracy as compared to Sprint and VIP acting individually. Both Sprint and VIP had the legal ability to cancel the contracts and demand payment at any time. The fact that there might have been some coordination between Sprint and VIP—a claim that is dubious even based on the allegations in the complaint—in exercising powers that each of them independently possessed, is insufficient to give rise to the seldom-invoked tort of conspiracy without an independent act. Furthermore, the complaint nowhere specifically alleges that Sprint and VIP acted through numbers or economic influence.

As Suleiman has again failed to state a claim upon which relief can be granted, Count II must be dismissed with prejudice.

## IV.  **CONCLUSION**

Suleiman's claims must be dismissed. His Amended Complaint should be stricken from the record for failure to respond to Sprint's motion to strike. However, even if his complaint were not stricken, it would still fail, because even after amendment it could not state any claim upon which relief could be granted.

The relief requested in Defendant's, VIP Wireless, Inc., VIP Holdings, LLC, Jack huston, and Patrick Groskopf's, Motion to Dismiss (Doc. 29); and Sprint Solutions, Inc., Boost Mobile, LLC, Virgin Mobile USA, L.P., and Jerry Bland's Motion to Strike and Dismiss Plaintiffs' First Amended Complaint (Doc. 30); is

**GRANTED.** The clerk is directed to **STRIKE** Plaintiffs' First Amended Complaint (Doc. 24) from the record. All of Plaintiff's claims are **DISMISSED WITH PREJUDICE.** The clerk is directed to close the case.

      **ORDERED** on January 8, 2015.

                                          **/s/ Richard Smoak**
                                          **RICHARD SMOAK**
                                          **UNITED STATES DISTRICT JUDGE**